# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ROBIN COLEMAN, | : | |
| Plaintiff, | : | |
| | | Case No. 3:14cv00469 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| CAROLYN COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

**I.     Introduction**

Plaintiff Robin Coleman brings this case for review of the Social Security Administration's final decision denying her application for Supplemental Security Income.  Plaintiff protectively filed her application on April 27, 2011.  She maintained that she had been under a disability, beginning on June 1, 2006, due to physical problems (e.g., lumbar and cervical spine disorders) and psychological problems (e.g., affective and personality disorders).

 Administrative Law Judge (ALJ) Christopher J. Dillon issued the dispositive decision, concluding that Plaintiff's impairments did not constitute a "disability" under

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

social security law and, therefore, she was not eligible to receive Supplemental Security Income.

Plaintiff presently challenges ALJ Dillon's non-disability decision. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), the administrative record (Docs. #6), and the record as a whole.

Plaintiff seeks an Order reversing the ALJ's decision and remanding the matter to the Social Security Administration for payment of benefits. The Commissioner seeks an Order affirming the ALJ's decision.

## II.     Background

### A.     Previous Application and Disability Determination

In 2006, Plaintiff filed a previous application for Supplemental Security Income. The application was partially granted based on an ALJ's finding that due to her psychological impairments, Plaintiff had been under a benefits-qualifying disability during the closed period from February 1, 2007 though April 30, 2009. (Doc. #6, *PageID* at 104-05).

### B.     Plaintiff's Vocational Profile and Testimony

Plaintiff was considered a "younger" person under Social Security regulations (she was 49 years old) when she filed her presently at-issue application for benefits. 20 C.F.R. § 416.963(c). She has a limited education and worked in the past as a fast-food worker, a

deli cutter/slicer, a cashier, an industrial cleaner – a job she "loved" but could no longer physically do – and a home health aid. (Doc. #6, *PageID* #s 60, 84).

During a hearing held by ALJ Dillon, Plaintiff testified that her condition had become worse after the previous ALJ's decision, although she sometimes has good days, which last for a few days up to a week. If she attempts an activity like vacuuming she "really pay[s] for it afterwards." *Id*. at 75. Her back problems limit her to standing for 5 to 10 minutes, then she must bend over, or stretch and sit down. *Id*. at 76. Yet sitting is hard too. She uses a TENS unit "that helps a lot." *Id*. at 76. Exercise and stretching also help her.

In addition to back pain, Plaintiff has shooting, sharp pain in her legs and numbness in her toes. Vacuuming and similar activities cause these problems or make them worse. She has a back brace and occasionally uses a cane. The most comfortable position for her is sitting.

Plaintiff's problems with anxiety and depression cause her difficulty staying on task. For instance, she will start one task but then, before completing it, will move on to a different task. Because of this, she can't seem to get things done. She has panic attacks, sometimes, as often as 3 or 4 times per week. When she has a panic attack, she gets sweaty and nervous "and everything gets real bright. Like light gets real bright." *Id*. at 81. She has crying spells, sometimes every day. She struggles with irritability. Her children "pretty much stress [her] out." *Id*. at 82. She sometimes has suicidal thoughts.

3

Her boyfriend reminds her every few days to take care of her personal hygiene. *Id*. at 83. When she gets nervous, she has trouble reading because the words jumble together, and she can't stay focused. She has difficulty reading when she does not know a word. She explained, "It's like being tongue-tied with reading." *Id*. at 82. She reads each night but only for about one-half hour.

### C. Medical Evidence

Plaintiff contends that the ALJ erred by rejecting the opinions provided by her treating physician, Dr. Nwokoro, and her treating psychiatrist, Dr. Shepard.

In January 2010, Dr. Nwokoro completed a basic medical form. He listed Plaintiff's diagnoses as chronic hepatitis C, lumbar degenerative disc disease, cervical degenerative disc disease, gastro-esophageal reflux disease, and depression. *Id*. at 775. He listed another diagnosis, perhaps hypothyroidism, but his handwriting is mostly illegible. *Id*.

Dr. Nwokoro checked boxes on the form indicating his opinions that Plaintiff could stand/walk for 1 hour during an 8-hour workday, and for 10 minutes without interruption; sit 2 to 5 hours during an 8-hour workday, and for 30 minutes without interruption; and lift up to 5 pounds frequently and 10 pounds occasionally. *Id*. at 776. He further opined that Plaintiff was extremely limited in her ability to engage in repetitive foot movements, markedly limited in bending, and moderately limited in pushing/pulling, reaching, and handling. *Id*. He noted that physical findings, pain management reports, and radiological

reports led him to form these opinions. And he concluded that Plaintiff was unemployable for 12 months or more. *Id*.

Treating psychiatrist Dr. Sheppard completed a mental functional capacity assessment in September 2009. She found Plaintiff markedly impaired in her ability to (1) interact appropriately with the general public, (2) accept instructions and respond appropriately to criticism, and (3) set realistic goals or make plans independently of others. She was moderately limited in many areas, including her ability to:

- understand, remember, and carry out detailed instructions;

- maintain attention and concentration for extended periods;

- work in coordination with or proximity to others without being distracted by them; to make simple work related decisions;

- complete a workday or workweek without interruptions from psychologically based symptoms;

- perform at a consistent pace without an unreasonable number and length of rest periods;

- get along with coworkers or peers without distracting them or exhibiting behavioral extremes; to maintain socially appropriate behavior; and

- adhere to basic standards of neatness and cleanliness.

*Id*. at 988. Dr. Sheppard believed these limitations would last between 9 and 11 months. *Id*.

In June 2012, Dr. Sheppard completed another mental functional capacity assessment. She opined that Plaintiff was markedly limited in many areas, including her

ability to:

- understand, remember, and carry out detailed instruction;

- to maintain attention and concentration for extended periods;

- to perform activities within a schedule;

- to maintain regular attendance, and be punctual within customary tolerances;

- to complete a normal workday or workweek without interruption from psychologically based symptoms and to perform at a consistent without an unreasonable number and length of rest periods;

- to travel in unfamiliar places or use public transportation; and

- set realistic goals or make plans independently of others.

*Id*. at 991.  Dr. Sheppard believed that Plaintiff was unemployable for 12 months or more. *Id*.  She noted that Plaintiff lacked suicidal or homicidal ideation ("∅SI/HI") and had poor memory and concentration, poor insight and judgment, anxious mood, limited affect, and tangential thought processes.  *Id*. at 992.

A detailed description of the remaining medical records is unnecessary because the undersigned has reviewed the entire administrative record and because both the ALJ and Plaintiff's counsel have discussed and referred to the relevant records concerning Plaintiff's physical and mental impairments with citations to specific evidence.  The Commissioner refers the Court to the ALJ's decision and otherwise addresses the evidence as needed. (Doc. #9, *PageID* #1204).

**III.    "Disability" Defined and The ALJ's Decision**

The Social Security Administration provides Supplemental Security Income (SSI) to indigent individuals, subject to several eligibility requirements. Chief among these, for purposes of this case, is the "disability" requirement. To receive SSI, an applicant must be a "disabled individual." 42 U.S.C. §1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986). The phrase "disabled individual" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity. 42 U.S.C. §1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70. An SSI applicant bears the burden of establishing that he or she is under a disability. *Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992).

ALJ Dillon evaluated the evidence under the multi-step sequential evaluation procedure required by social security regulations. *See* 20 C.F.R §416.920(a)(4). He initially found that Plaintiff (1) had not engaged in substantial paid work; (2) had the severe impairments of hepatitis C, cervical and lumbar spine disorder, Attention Deficit Hyperactivity Disorder (ADHD), affective disorder, anxiety-related disorder, personality disorder, and somatoform disorder; and (3) did not suffer from one or more impairments that constituted a disability at Step 3 of the sequential evaluation. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. #6, *PageID* #s 49-52).

At Step 4 of the evaluation, the ALJ assessed the most Plaintiff could do in a work setting despite her impairments. This constitutes her "residual functional capacity." *See* 20 C.F.R. §416.945. The ALJ concluded:

> [Plaintiff] retains the residual functional capacity to perform work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds; pushing or pulling similar amounts; standing, walking, and sitting for 6 hours each; the option every 30 minutes to sit for up to 5 minutes at a workstation; no climbing of any kind; no more than occasional ability to perform all other postural activity; no exposure to environmental extremes, such as dust gas, fumes, heat, cold, humidity ....

(Doc. #6, *PageID* #52). The ALJ then determined that Plaintiff's mental residual functional capacity was limited to "no more than occasion interaction with supervisors, co-workers; no more than superficial contact with the public, such as sharing common areas and greeting 'hello'; no more than simple, routine, repetitive tasks with no persistence limitations but a pace that does not allow for production quotas." *Id*. Considering Plaintiff's residual functional capacity, the ALJ concluded at Step 4 that Plaintiff's work limitations prevented her from performing her past relevant work.

At Step 5 the ALJ found that Plaintiff could still perform a significant number of jobs that were available in the national economy. *Id*. at 61.

The sum and substance of the ALJ's sequential evaluation led to her ultimate conclusion that Plaintiff was not under a benefits-qualifying disability.

IV.  **Judicial Review**

The Social Security Administration's determination of disability – typically

embodied in an ALJ's written decision – is subject to review in this Court along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Social Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see Bowen v. Comm'r. of Social Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).  Reviewing the ALJ's legal criteria for correctness may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Social Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746.

The substantial-evidence review does not ask whether the Court agrees or disagrees with the ALJ's factual findings or whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Social. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Warner v. Comm'r of Social Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

V.  **Discussion**

    A.  **Dr. Nwokoro's Opinions**

The ALJ addressed Dr. Nwokoro's opinion as follows:

9

> I find that Dr. Nwokoro's opinion is not entitled to controlling or deferential weight under the Regulations. I give little weight to his assessment as it is unsupported by objective signs and findings. As discussed above, Dr. Nwokoro's progress notes generally show only some cervical and lumbar spine tenderness and abnormal motor strength, and only on a few occasions. Dr. Nwokoro otherwise documented normal motor strength, and only on a few occasions. Dr. Nwokoro otherwise documented normal motor strength, normal spinal range of motion, and normal movement of all extremities on several other occasions. Many other notes show no significant musculoskeletal or neurological findings (Exhibits 8F, 9F, 20F, and 24F [*PageID* #s 684-785, 788-899, 1047-1073, 1107-1112]). These findings do not come close to supporting the limitations suggested by Dr. Nwokoro....

(Doc. 36, *PageID* #59).

Social security regulations recognize several different types of medical sources: treating physicians and psychologists, nontreating/examining physicians and psychologists, and nontreating/record-reviewing physicians and psychologists. *See* 20 C.F.R. § 404.1527(c), (e). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Social Security Ruling No. 96–6p, 1996 WL 374180, at *2 (July 2, 1996)). The strongest ties potentially arise between a treating-medical source and his or her patients. Given this, the treating physician rule requires ALJs to apply controlling weight to a treating-medical source's opinion when the opinion is (1) "well supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "is not inconsistent with other substantial evidence in [a claimant's] case record." 20 C.F.R. §404.1527(c)(2)); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014). If both conditions do

not exist, the treating source's opinions are not controlling.

The treating source's opinions, however, might still be due dispositive weight because the ALJ must continue to weigh the opinion under additional factors, "including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Gentry*, 741 F.3d at 723 (citation omitted). These factors likewise apply to the ALJ's review of a nontreating source's opinions. 20 C.F.R. §404.1527(e); *see* Social Sec. Rul. 96-6P, 1996 WL 374180 at *2.

Plaintiff contends, "Contrary to the ALJ's finding that the objective medical evidence did not show a worsening of Ms. Coleman's cervical and lumbar conditions, the actual MRI test results show a progressive worsening of both conditions." (Doc. #7, *PageID* at 1189). To support this contention, Plaintiff points to the results of her lumbar MRI on February 16, 2013, particularly her "*broad based bulge at L2-3* with neuroforaminal narrowing." *Id*. (citing Doc. #6, *PageID* #1136) (Plaintiff's italics). Plaintiff then compares this result with previous objective-test results and concludes that the MRIs show a progressive worsening of her cervical and lumbar spine impairments that support Dr. Nwokoru's opinions. Plaintiff's comparison, however, does not show a lack of substantial evidence supporting the ALJ's decision to place little weight on Dr. Nwokoru's decision.

Plaintiff reads the February 16, 2013 MRI results too narrowly. When read in

11

context, the entire finding Plaintiff relies on states:

> At L2/3, there is a *broad based bulge at L2-3* with neuroforaminal narrowing bilaterally.  There is no significant central canal stenosis at any level of the lumbar spine.

The lack of significant central stenosis tends to diminish the significance of the broad based bulge at L2/3.  This is so given what spinal canal stenosis denotes.  One authority explains:

> Spinal stenosis is the narrowing of your spinal canal and nerve root canal along with the enlargement of your facet joints.  Most commonly it is caused by osteoarthritis and your body's natural aging process, but it can also develop from injury or previous surgery.  As the spinal canal narrows, there is less room for your nerves to branch out and move freely.  As a result, they may become swollen and inflamed, which can cause pain, cramping, numbness or weakness in your legs, back, neck, or arms....

http://www.mayfieldclinic.com (search for "spinal canal stenosis"); *see* The Merck Manual, p. 476 (17th Ed. 1999); *see also* Taber's Cyclopedic Medical Dictionary, p. 1964 (19th Ed. 2001).  This same MRI also revealed "5 lumbar type vertebral bodies with normal vertebral body height and alignment.  There is no acute fracture or dislocation.  No spondylosis or spondylolisthesis."  (Doc. #6, *PageID* at 1136).  These findings, together with broad-based bulge and related findings at L2/3 led to the following "Impression: Mild degenerative changes of the lumbar spine with no acute fracture or dislocation identified."  (Doc. #6, *PageID* at 1136).  When the entire MRI report is considered, it shows only a mild worsening of Plaintiff's lumbar spine when compared to her previous 2007 MRI.  This remains so even though she had a broad-based bulge at L2/3 with mild foraminal

narrowing in February 2013.  Given this, "a reasonable mind might accept," *Foster v. Halter*, 279 F.3d348, 353 (6th Cir. 2001), the ALJ's conclusion that Dr. Nwokoru's opinion is not supported by objective evidence and, therefore substantial evidence supports the ALJ's conclusion.  *See id*. (If substantial evidence supports the agency's decision, it must be affirmed even if some evidence in the record supports the opposite conclusion and even if this Court, as the trier of fact, would have reached a different conclusion).

      This conclusion likewise applies to a comparison of Plaintiff's February 16, 2013 MRI of her cervical spine with her earlier September 2007 cervical-spine MRIs.  *Cf. PageID #s 595-96 with PageID #s1136-37*.  The more recent cervical-spine MRI showed, "Multilevel degenerative changes of the spine with reversal of the lordotic curvature and loss of vertebral body height at several levels, unchanged in comparison to prior MRI."  *Id*. at 1137.  Review of the September 2007 MRI and a report from an MRI in April 2010 concerning Plaintiff's cervical spine reveals findings consistent with her cervical-spine MRI in February 2013.  Consequently, this consistency might lead a reasonable mind to accept the ALJ's conclusion that Dr. Nwokoru's opinion is not supported by objective evidence.  Substantial evidence, therefore, supports this aspect of the ALJ's decision.

      Plaintiff next contends:

> Ironically, the ALJ erroneously used the very clinical findings on physical exam required by Defendant to find that [Plaintiff's] is not disabled. (PageID 54).  He also erroneously relied, contrary to the defendant's ruling and regulations, that these clinical findings were not consistently found on exams to find that [Plaintiff] is not disabled.  (PageID 55).  SSR 96-7p states, "The examples in the regulations (reduced joint motion, muscle

> spasms, sensory deficit, and motor disrupt findings that may result from, or be associated with, the symptoms of pain. When present these findings tend to lend credibility to an individual's allegations about pain and their functional effects." The defendant acknowledges the intermittent condition of clinical findings in 20 CFR Pt. 404, Subpt. P, App. 1, 1.00D in which she states, "Because abnormal physical findings *may be intermittent*, their presence over a period of time must be established by a record of ongoing management and evaluation. [Emphasis added] The ALJ's determination is contrary to the defendant's own ruling and regulations and should be reversed.

(Doc. #7, *PageID* #s 1189-90). Careful review of the pages that Plaintiff cites from the ALJ's decision (*PageID* #s 54-55) fails to reveal any error by the ALJ. Instead, the ALJ's description of the medical records was accurate. Substantial evidence, moreover, supports the ALJ's reasons provided in this part of his decision for concluding that the objective signs from Plaintiff's treating and examining physicians do not support her claim of disabling pain. Review of those portions of Plaintiff's medical records that the ALJ relied confirms the presence of substantial supporting evidence. *See PageID* #s 54-55 (and records cited therein). And, the ALJ's decision is not contrary to the permissive language used by the passages Plaintiff quotes from Soc. Sec. Ruling 96-6P and the Commissioner's Listing, 20 CFR Pt. 404, Subpt. P, App. 1, 1.00D.

     Plaintiff is correct to assert that a claimant does not have to undergo surgery in order to show she suffers from a benefits-qualifying disability. But, in this case, the ALJ's reference to the fact that Plaintiff had not had back surgery was not error. Instead, the ALJ mentioned that Plaintiff had not undergone back surgery as merely one of the many reasons he provided to support his conclusion that Plaintiff "has not sought the type of

treatment one would expect for an individual claiming to suffer from disabling chronic back and neck pain." (Doc,. #6, *PageID* #55).  At no point did the ALJ specifically find that Plaintiff was not disabled solely due to her lack of back surgery.  *See id*.

The ALJ's decision to place little weight on Dr. Nwokoru's opinion is also supported by Dr. Nwokoru's omission of a significant explanation to support his opinions. *See PageID* #s 775-77; *see also* 20 C.F.R.§416.927(c)(3) ("The better an explanation as source provides for an opinion, the more weight we will give that opinion.").  Plaintiff points out that the restrictions recommended by pain specialist Dr. Gomma were consistent with Dr. Nwokoru's opinions.  The restrictions included, for example, lifting and carrying no more than 5 pounds with intermittent carrying less than 10 pounds; no pulling heavy objects over 10 pounds; and no repetitive movements of neck, upper back, and lower back. (*PageID* #936).  Plaintiff contends that the ALJ erred by not mentioning these restrictions. This is incorrect.  Dr. Gomma provided his recommendations about Plaintiff's limitations on November 18, 2009, well before the date she applied for benefits (April 27, 2011) and, therefore, well before the start date of her potential eligibility for benefits.  Even if the ALJ erred by not mentioning Dr. Gomma's recommended restrictions, the error is harmless in light of the substantial evidence supporting the ALJ's many other reasons for placing little weight on Dr. Nwokoru's opinions. *Cf. Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) ("if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, a failure to observe [§416.927(d)(2)] may not

15

warrant reversal.").

Plaintiff next maintains that the ALJ erred by not crediting the opinions of the non-examining state-agency reviewers over Dr. Nwokoru's opinions, and by not applying the factors mandated by the regulations to the opinions by the state-agency reviewers (Drs. Klyop and Stroebel). These contentions lack merit. The ALJ found the opinions of the state-agency reviewers "generally supported by objective findings in the preponderance of the record, including those findings submitted after their assessments." (Doc. #6, *PageID* #57). This constituted a proper application of the regulation's "supportability" factor. The ALJ then provided many reasons throughout the same paragraph for placing significant weight on the state-agency reviewers' opinions. *Id*. at #s 57-59. In light of this explanation, it cannot be reasonably said that the ALJ applied greater scrutiny to Dr. Nwokoru's opinions than to the opinions of the state-agency reviewers.

Accordingly, Plaintiff's challenges to the ALJ's evaluation of Dr. Nwokoru's opinions lack merit.

### B. Plaintiff's Treating Psychiatrist

Plaintiff contends that the ALJ erred in rejecting the opinions of her treating psychiatrist Dr. Sheppard (Doc. #6, *PageID* #s 988-92), reviewed above, *supra*, §II(C). Plaintiff emphasizes that Dr. Sheppard treated and observed Plaintiff over a long period of time and that the ALJ is not a trained mental health specialist and is unqualified to determine what signs and symptoms indicate the diagnosis of Plaintiff's mental health

impairments.  Plaintiff argues that the ALJ erred by relying on Dr. Sheppard's GAF assessment to find that Plaintiff was not disabled by her mental impairments.

The ALJ found that objective signs and findings did not support Dr. Sheppard's opinions. Consequently, the ALJ placed little weight on Dr. Sheppard's opinions.

Plaintiff's challenges to the ALJ's evaluation of Dr. Sheppard's opinions lack merit. Social Security law authorized the ALJ to review Plaintiff's medical records and consider the presence, or absence, of signs and symptoms when evaluation Dr. Sheppard's opinions about Plaintiff's work limitations. *See* 20 C.F.R. §416.928.  The ALJ did not err in doing so.  He compared the signs and symptoms tending to show the presence of Plaintiff's mental impairments with those revealing the lack of severity of her mental impairments. *Id*. at 60.  He found on the one hand that Plaintiff had anxious moods, constricted affect, slowed activity and speech, preoccupied thoughts, and some impairment of memory, insight, and judgment.  On the other hand, he properly observed that Plaintiff's mental status findings included euthymic moods, full-ranged affect, good hygiene, average speech, cooperative behavior, better moods, goal-directed thought process, and no significant impairment of cognition.  *Id*.  Substantial evidence supports these findings and, therefore, supports the ALJ's decision to place little weight on Dr. Sheppard's opinions. *See id*. at 905, 907, 994, 1002, 1016, 1117.  As to Plaintiff's moderate GAF scores, even if it is assumed in Plaintiff's favor that the ALJ should not have used these scores to discount Dr. Sheppard's opinions, the ALJ's remaining explanation and reliance on the record

17

applied the correct legal criteria and was supported by substantial evidence.

Accordingly, Plaintiff's challenges to the ALJ's evaluation of Dr. Sheppard's opinions lack merit.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be affirmed;

2. The case be terminated on the docket of this Court.

January 4, 2016

                  s/Sharon L. Ovington
                  Sharon L. Ovington
             Chief United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen (17) days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).